JULIUS CANNON, Defendant Below-Appellant,
v.
STATE OF DELAWARE, Plaintiff Below-Appellee.
No. 556-2009.
Supreme Court of Delaware.
Decided: April 19, 2010.
Submitted: March 15, 2010.
Before HOLLAND, BERGER and JACOBS, Justices.

ORDER
CAROLYN BERGER, Justice.
This 19th day of April 2010, upon consideration of the appellant's brief filed pursuant to Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response thereto, it appears to the Court that:
(1) The defendant-appellant, Julius Cannon, was found guilty by a Superior Court jury of Possession of a Firearm By a Person Prohibited and Conspiracy in the Second Degree.[1] On the weapon conviction, Cannon was sentenced to 6 years of incarceration at Level V, to be followed by 6 months Level IV Halfway House. On the conspiracy conviction, he was sentenced to 2 years of incarceration at Level V, to be suspended for 1 year at Level III probation. This is Cannon's direct appeal.
(2) Cannon's trial counsel has filed a brief and a motion to withdraw pursuant to Rule 26(c). The standard and scope of review applicable to the consideration of a motion to withdraw and an accompanying brief under Rule 26(c) is twofold: (a) the Court must be satisfied that defense counsel has made a conscientious examination of the record and the law for claims that could arguably support the appeal; and (b) the Court must conduct its own review of the record to determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]
(3) Cannon's counsel asserts that, based upon a careful and complete examination of the record and the law, there are no arguably appealable issues. By letter, Cannon's counsel informed Cannon of the provisions of Rule 26(c) and provided him with a copy of the motion to withdraw, the accompanying brief and the complete trial transcript. Cannon also was informed of his right to supplement his attorney's presentation. Cannon has responded with a brief that raises five issues for this Court's consideration. The State has responded to the position taken by Cannon's counsel as well as the issues raised by Cannon and has moved to affirm the Superior Court's judgment.
(4) Cannon raises five issues for this Court's consideration. He claims that a) there was insufficient evidence presented at trial to support the conviction of second degree conspiracy; b) the jury's questions to the judge during deliberations were not answered adequately; c) there was insufficient evidence presented at trial to support the weapon conviction; d) the charges, which stemmed from separate incidents, should have been severed; and e) the State's witnesses presented inconsistent testimony.
(5) The following evidence was presented at trial. In the early morning of July 17, 2008, there was an armed home invasion at the residence of James and Corrine Jones in Harrington, Delaware. The Joneses and Timothy Clokey, Corrine's son, testified that five to six African American men entered the residence and stole, among other things, a number of firearms and electronic items such as an X-Box and DVD's. A neighbor, Daniel Lilly, testified that he saw a dark-colored 4-door sedan and several unknown individuals on the Jones property at the time of the incident. James Jones testified in detail regarding the stolen items, including the serial numbers of the weapons. Corrine Jones testified that she was sexually assaulted with the barrel of a firearm held by one of the men.
(6) Delaware State Police Detective Matthew Fuski was the investigating officer called to the scene of the home invasion. He testified that his investigation of the incident was at a standstill when, on August 4, 2008, he was notified by the Milford, Delaware police that, while investigating a trespassing complaint at Unit 214, Colony West Apartments, they had identified a firearm taken from Unit 221 that had been stolen in the home invasion. After receiving permission to search Unit 214, additional items stolen in the home invasion were found. Following the execution of a search warrant, still more items were found in Unit 220, where Cannon lived with co-defendants Theodore Singletary, Tykisha Hannah and Zipporah Long.
(7) All of the items recovered from Colony West Apartments were taken to Troop 3, where the Joneses identified them as their stolen property. According to Detective Fuski, 80-85% of the items stolen from the Joneses were found in Units 214 and 220. In a taped statement to Detective Fuski, Cannon admitted to having regular access to the apartments, to being in possession of a Playstation (later determined to have been stolen in the home invasion), and to owning a dark-colored Cadillac sedan (where a DVD player stolen in the home invasion was found). Several witnesses testified that Cannon lived in Unit 220 with his girlfriend and had access to the other units. Cannon's co-defendant, Keith Jones, testified that Cannon had placed the stolen items in Units 214 and 220. In a statement to Detective Fuski, Jones also stated that Cannon told him he had assaulted a woman with a rifle barrel during a robbery.
(8) Lieutenant Donald Baynard of the Delaware State Police testified that he apprehended two individuals named Antonio McCray and Tyrell Waters in connection with an unrelated robbery on August 14, 2009. A firearm with a serial number matching one that had been provided by James Jones was recovered in the robbery. McCray, Waters, and another individual named Shanika Kirby all testified that Cannon had been involved with the sale of that firearm on or about August 3, 2008. Cannon himself testified that he had pleaded guilty to Robbery in the Second Degree, a Class E felony, in 2002.[3]
(9) Cannon's first claim is that there was insufficient evidence presented at trial to support the charge of second degree conspiracy.[4] In reviewing a claim of insufficiency of the evidence, this Court will uphold a conviction as long as any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could find the defendant guilty beyond a reasonable doubt.[5] In this case, the trial transcript reflects that the statements and trial testimony of several witnesses, as well as Cannon's own statement to police, directly connected Cannon either to the home invasion itself or to the property stolen during the home invasion. Although the jury declined to convict Cannon of the underlying crimes of robbery, burglary and rape, it, nevertheless, had more than sufficient evidence before it to conclude that Cannon was guilty of conspiring to commit those crimes. As such, we conclude that Cannon's first claim is without merit.
(10) Cannon's second claim is that the jury's questions to the judge during deliberations were not answered adequately. The record reflects that, during deliberations on June 4, 2009, the jury asked the trial judge three questions: a) whether the charge of possession of a firearm by a person prohibited was limited to the July 2008 home invasion; b) whether an accused could be found guilty of second degree conspiracy, but not guilty of the underlying crime of robbery; and c) whether the jury's verdict had to be unanimous. In response to those questions, the judge told the jury, in essence, that they should carefully review the jury instructions. Because the judge's response to the questions was legally accurate and avoided any comment on the evidence,[6] we conclude that there was no error. Therefore, we conclude that Cannon's second claim is without merit.
(11) Cannon next claims that there was insufficient evidence presented at trial to support the charge of possession of a firearm by a person prohibited.[7] The evidence of Cannon's connection to the July 2008 home invasion, the evidence of his involvement with the sale of a firearm in August 2008, the evidence of the presence of weapons in apartments to which he had regular access, plus Cannon's admission to having pleaded guilty to a felony in 2002, was more than sufficient evidence to for the jury to find him guilty of the weapon charge. Cannon's acquittal of two additional weapon charges[8] does not mean he should also have been acquitted of the charge of possession of a firearm by a person prohibited, since those crimes involve significantly different elements of proof.[9] We, therefore, conclude that Cannon's third claim of error is without merit.
(12) Cannon's fourth claim is that the charges stemming from the July 2008 and August 2008 incidents should have been severed. Multiple charges may be included in the same indictment and tried together if they are logically or temporally "connected."[10] Moreover, this Court has held that a factor to consider in determining if severance is warranted is whether evidence pertaining to the charge sought to be severed is admissible in a trial of the remaining charges.[11] In this case, there was a logical connection between the July 2008 home invasion and the events surrounding the discovery of the stolen property in August 2008, including the sale of the stolen firearm. As a practical matter, it would have been impossible to separate the evidence underlying the July 2008 and August 2008 incidents. In the absence of any error, we conclude that Cannon's fourth claim also is without merit.
(13) Cannon's fifth, and final, claim is that the State's witnesses presented inconsistent testimony. Specifically, Cannon argues that the inconsistent testimony of McCray, Kirby and Waters regarding his involvement in the sale of the firearm in August 2008 rendered it unreliable. It is the jury's responsibility as the trier of fact to assess the credibility of all of the witnesses.[12] This Court will not disturb a jury's verdict as long as there is competent evidence to support it.[13] A jury verdict will not be set aside merely because it is based upon conflicting evidence.[14] The record in this case reflects that there was more than sufficient evidence to support the jury's finding of guilt on the weapon charge. Moreover, there is no evidence that the jury failed to properly assess the credibility of the witnesses presented at trial. As such, we conclude that Cannon's final claim likewise is without merit.
(14) This Court has reviewed the record carefully and has concluded that Cannon's appeal is wholly without merit and devoid of any arguably appealable issues. We also are satisfied that Cannon's counsel has made a conscientious effort to examine the record and the law and has properly determined that Cannon could not raise a meritorious claim in this appeal.
NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED. The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.
NOTES
[1] Cannon was acquitted of 14 other charges, including robbery, burglary and theft. The Superior Court dismissed an additional charge of rape.
[2] Penson v. Ohio, 488 U.S. 75, 83 (1988); McCoy v. Court of Appeals of Wisconsin, 486 U.S. 429, 442 (1988); Anders v. California, 386 U.S. 738, 744 (1967).
[3] Del. Code Ann. tit. 11, §831.
[4] Del. Code Ann. tit. 11, §512 (A person is guilty of second degree conspiracy "when, intending to promote or facilitate the commission of a felony, the person . . . (1) [a]grees with another person or persons that they or 1 or more of them will engage in conduct constituting the felony or an attempt . . . to commit the felony: or (2) [a]grees to aid another person or persons in the planning or commission of the felony . . . and the person or another person with whom the person conspired commits an overt act in pursuance of the conspiracy."
[5] Word v. State, 801 A.2d 927, 929 n. 7 (Del. 2002).
[6] Sammons v. Doctors for Emergency Services, P.A., 913 A.2d 519, 542 (Del. 2006).
[7] Del. Code Ann. tit. 11, §1448(a) (The statute prohibits a person "convicted . . . of a felony or a crime of violence involving physical injury to another . . ." from "purchasing, owning, possessing, or controlling a deadly weapon or ammunition for a firearm within the State. . . .")
[8] Cannon also was charged with Possession of a Firearm During the Commission of a Felony under Del. Code Ann. tit. 11, §1447A and Possession of a Weapon With an Obliterated Serial Number under Del. Code Ann. tit. 11, §1459.
[9] Del. Code Ann. tit. 11, §§1448(a), 1447A, and 1459.
[10] Wiest v. State, 542 A.2d 1193, 1195 (Del. 1988); Super. Ct. Crim. R. 8(a).
[11] Johnson v. State, 983 A.2d 904, 922-23 (Del. 2009).
[12] Knight v. State, 690 A.2d 929, 932 (Del. 1996).
[13] Zutz v. State, 160 A.2d 727, 729 (Del. 1960).
[14] Id.